J-S42015-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE: ADOPTION OF: J.W. | IN THE SUPERIOR COURT OF PENNSYLVANIA

APPEAL OF: M.W. AND L.B. | No. 101 WDA 2014

Appeal from the Order Entered December 17, 2013,
in the Court of Common Pleas of Washington County, Orphans'
Court, at No(s): 63-13-0933

IN RE: ADOPTION OF: J.W. | IN THE SUPERIOR COURT OF PENNSYLVANIA

APPEAL OF: M.W. AND L.B. | No. 102 WDA 2014

Appeal from the Order Entered December 17, 2013,
in the Court of Common Pleas of Washington County, Orphans'
Court, at No(s): 63-13-0144

BEFORE: PANELLA, JENKINS, and MUSMANNO, JJ.

MEMORANDUM BY PANELLA, J.: **FILED SEPTEMBER 12, 2014**

M.W. ("Father") and L.B. ("Mother") appeal the orders entered on December 17, 2013, which granted the Petitions filed by Washington County Children and Youth Service ("CYS") to involuntarily terminate Father's and Mother's parental rights to their minor sons, Jd.W. (born in August of 2011), and Jm.W. (born in February of 2013), pursuant to § 2511(a)(2) and (b) of the Adoption Act, 23 Pa.C.S.A. § 2511(a)(2) and (b). We affirm.

Mother and her family have a history of involvement with CYS dating back to 2001, dealing with issues of truancy, parenting deficiencies, and sexual abuse. Mother had originally been adjudicated a dependent child on

May 1, 2001, but the dependency was terminated on October 30, 2001. Mother was again adjudicated dependent on May 1, 2007, but her dependency was terminated on March 5, 2009. Finally, Mother was adjudicated dependent on October 13, 2011, when Mother was 17 years old, and Jd.W. was 2 months old. Jd.W. remained in Mother's care while Mother was a dependent child in foster care from the time of his birth in September of 2011 until July 31, 2013, when Mother signed herself out of dependency.

Jm.W. was conceived during the time Father was ordered to have no contact with Mother and was born in February of 2013, while Mother was in foster care. Jm.W. also remained in Mother's care until July 31, 2013. Both Children have remained in foster care since Mother signed herself out of dependency. At that time, Mother was informed by CYS that she could keep the Children with her and transition into independent living, but Mother chose to leave foster care and reside with Father. *See* Findings & Order, 12/17/2013, at 2-3.

Mother had been examined by Dr. Ronald Neeper, M.D., Ph.D. and Dr. Chaudhary, M.D., and it was determined that she was incompetent to make an informed decision to remove herself from dependency, did not have a reasonable or rational understanding of the potential consequences, and, due to her cognitive limitations, was unable to make mature decisions, have adequate, mature self-control, and be a responsible adult. *See id*., at 3-4.

Mother, a victim of sexual abuse as a child, has been diagnosed with mild retardation and has an I.Q. of 60-63. Mother is preoccupied with Father and does not appreciate the danger to her and the Children presented by Father. Father's undue influence on Mother and her mental retardation affect Mother's judgment, and Mother's cognitive abilities limit her parenting capabilities. Also, Mother lacks the ability to understand the needs of the Children and to understand what is safe and unsafe. *See id*., at 4.

Mother was discharged from parenting classes provided by the Bair Foundation. In classes, Mother demonstrated ineffective intervention and poor execution of disciplinary skills, and could not receive instruction effectively. Similarly, Mother also refused nurturing parenting classes from Justice Works Youth Care, and does not have the ability to parent independently or to prepare meals for the Children. *See id*.

Moreover, Mother has not demonstrated the ability to form an effective parent-child relationship with the Children. Mother has little emotional connection with the Children, has displayed a lack of empathy for the Children, and is unable to react to the Children's needs. *See id*., at 4-5.

Mother does have a bond with Jd.W.; however, Jd.W. looks to his foster mother for parental guidance. It is noted that the Children do not react adversely upon the conclusion of their visits with Mother. *See id*., at 5.

At the time of Mother's removal from the home of her parents and the home of Father, Father was 52 years old, a registered sex offender, and had been having a relationship with Mother since she was 15 years old—and perhaps younger. Mother was removed by CYS when Father was overheard threatening Mother with domestic violence.

Father was required to be registered as a sex offender under Megan's Law due to his conviction for the sexual assault of his nine-year-old granddaughter and for his conviction for indecent assault of another minor. Father's completion of the Abel Assessment for Sexual Interest-2 (AASI-2) indicates that Father falls into a deviant range for persistent sexual interest in three of four categories, including pre-school and grade school age females and pre-school age males. *See id*. The results of Father's completion of the Minnesota Multiphasic Personality Inventory indicate that Father is prone to anger and hostility, resentment and displaces blame on others, that Father is suspicious and rigid in his social relationships, and that he tends to misinterpret social situations and has a poor understanding of social mores. *See id*., at 5-6.

Father is an untreated sex offender. He is a safety threat to the minor Children. Father has not completed his court-ordered mental health assessment, nor has he completed court-ordered sexual offenders' treatment. He violated the court order restricting him from contact with Mother, and impregnated Mother during the restriction. It is undisputed that

Father has not provided any cards, gifts or letters for the Children, and has not inquired about the Children through CYS. Father has regularly attended supervised visits with the Children, and his behavior has been appropriate. There is no evidence that Father has a bond with the Children. The trial court prudently ruled that the termination of Father's parental rights would not be detrimental to the Children and would serve the Children's best interests. **See id**., at 6-7.

On February 6, 2013, CYS filed a Petition for Termination of Parental Rights of Jd.W., seeking termination with respect to both Mother and Father. CYS also filed a Petition for Termination of Parental Rights of Jm.W. on July 29, 2013, seeking termination of parental rights of both parents. A termination hearing was scheduled for October 2, 2013, and was concluded on December 3, 2013. Mother and Father did not present evidence or testify at the hearing. Following the hearing, the trial court entered the orders dated December 16, 2013, and entered on December 17, 2013, terminating the parental rights of Mother and Father.

On January 15, 2014, Mother and Father filed timely notices of appeal. Mother and Father filed concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b) on that same date. This Court, acting *sua sponte*, consolidated the appeals at 101 and 102 WDA 2014 on February 7, 2014.

On appeal, Mother and Father raise the following issues:

1. Did the trial court err in finding that competent evidence established the statutory grounds for termination of M.W.'s and L.B.'s parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2)?

2. Did the trial court err in finding that the Children's best interest were served by terminating M.W.'s and L.B.'s parental rights pursuant to 23 Pa.C.S.A. § 2511(b)?

Appellants' briefs at 4.

Initially, we review the termination decrees according to the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 614 Pa. 275, 284, 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 613 Pa. 371, 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, [575 Pa. 647, 654-655], 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id*.

As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility

determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (Pa. 1994).

***In re Adoption of S.P.***, 47 A.3d 817, 826-827 (Pa. 2012).

Termination of parental rights is governed by section 2511 of the

Adoption Act, which requires a bifurcated analysis.

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S.A. §

2511). The burden is upon the petitioner to prove by clear and convincing

evidence that the asserted statutory grounds for seeking the termination of

parental rights are valid. ***See In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super.

2009).

Instantly, although the decrees terminated Mother's and Father's

parental rights pursuant to section 2511(a)(1), (2), (5), (8), and (b), the

trial court, in its Rule 1925(a) opinion, analyzed the orders with respect only

to § 2511(a)(1), (2), and (b). This Court must uphold the trial court's conclusion with regard to one subsection of section 2511(a) in order to affirm the termination of parental rights. **See In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Herein, we review the orders pursuant to § 2511(a)(2) and (b), which provide as follows.

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

Our examination of the record reveals that the trial court's decision to terminate Mother's and Father's parental rights under section 2511(a)(2)

and (b) is supported by clear and convincing evidence, and that there is no abuse of the trial court's discretion.

We have read the trial court's Findings & Order filed on December 17, 2013 and its Opinion filed on March 5, 2014, and we are satisfied that the trial court's analysis is accurate and complete. Accordingly, we affirm the trial court orders on the basis of the thoughtful, concise, and well-written opinions of the Honorable John F.DiSalle, that we adopt as our own.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  9/12/2014

Circulated 08/25/2014 11:02 AM

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY,
PENNSYLVANIA
ORPHAN'S COURT DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ADOPTION OF: J.W., | ) | No. 63-13-0144 |
| | ) | |
| ADOPTION OF: J.W., | ) | No. 63-13-0933 |
| | ) | |
| Minor Children. | ) | |
| | ) | |
| Appeal of M.W. and L.B. | ) | |

## Opinion of the Trial Court

This matter comes before the Superior Court on appeal from the order of the Trial

Court dated December 16, 2013, granting the Petitions for Termination of Parental Rights

filed on behalf of the Minor Children, J.W. and J.W. by the Washington County Children

and Youth Social Services Agency ("the Agency"), terminating the parental rights of the

birth parents of the minor children, mother, L.B. ("Mother") and father, M.W. ("Father").

From this order, Mother and Father filed timely appeals to the Superior Court, and the

Trial Court shall treat these as a "fast track" appeals pursuant to Pa.R.A.P.

1925(a)(2)(ii).[1]

### Procedural History:

The Petition for Termination of Parental Rights with respect to the older child

J.W. (hereinafter referred to as "Jd.W." in order to distinguish the two children), was

filed by the Agency on February 6, 2013, seeking termination with respect to both

Mother and Father. The Petition for Termination with respect to the younger child J.W.

---

[1] Pa.R.A.P. 1925(a)(2)(ii), effective March 16, 2009, regarding children's fast track appeals, requires this Court to "within 30 days file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, which may, but need not, refer to the transcript of the proceedings." The transcript of the terminations proceedings has not been completed as of the date of this Opinion.

1

(hereinafter referred to as "Jm.W."), was filed by the Agency on July 29, 2013, seeking termination of the parental rights of both parents. The proceedings were scheduled initially before the undersigned on October 2, 2013, however, the testimony did not conclude on that date. Thereafter, with the agreement of all parties, the proceedings were rescheduled for December 3, 2013, at which time the record was completed.

Throughout the termination proceedings, Mother was represented by Erin Dickerson, Esquire, who had represented Mother in the dependency proceedings brought by the Agency, and Father was represented by Keith Owen Campbell, Esquire, who had represented Father in the dependency proceedings. The children had been adjudicated as dependent children by the Juvenile Court; Jd.W. was adjudicated dependent on May 12, 2012 and Jm.W. was adjudicated dependent by order dated March 11, 2013.[2] The children were represented by Marianne Hathaway, Esquire as their *Guardian ad Litem.*

After the hearings on October 2, 2013 and December 3, 2013, at the conclusion of the record, the Trial Court made findings of fact, and based thereon, entered the December 16, 2013 order terminating parental rights of Mother and Father.

**Factual Findings:**

The Trial Court's order terminating the parental rights of Mother and Father was based on the following findings of fact:[3]

Jd.W. was born on August 1, 2011, and is now two (2) years old, and his brother, Jm.W. was born on February 28, 2013, and is now one (1) year old.

---

[2] Agency's Exhibit 10.
[3] As set forth above, the transcript of the termination proceedings has not been completed as of the date of this Opinion.

2

Mother and her family have had a history of involvement with the Agency dating back to 2001, for issues including truancy, parenting deficiencies, deplorable housing conditions, and sexual abuse allegations. Mother had been previously adjudicated a dependent child on May 1, 2001, but her dependency was terminated on October 30, 2001. Mother was again adjudicated dependent on May 1, 2007, but her dependency was again terminated on March 5, 2009.

Mother was again adjudicated a dependent child by order dated October 13, 2011. At that time, Mother was seventeen (17) years old and Jaden was two months old. This most recent adjudication of Mother's dependency arose out of the events of September 20, 2011, when Mother was removed from the home of her parents and from the home of Father, along with Jd.W., by voluntary placement agreement. At the time of her removal, Mother's family had entered into a safety plan with the Agency, the terms of which had included keeping Father away from Mother. Father was then 52 years of age, a registered sex offender, and had been having a relationship with Mother since she was 15 years old, and perhaps younger. Mother was removed by the Agency when Father was overheard threatening Mother with domestic violence. The voluntary placement agreement was followed by an emergency shelter order dated September 20, 2011.

On October 13, 2011, at the conclusion of Mother's dependency proceedings, the Court granted an emergency shelter order removing Jd.W. from the care of Father, but allowing Jd.W. to remain in Mother's care as long as Mother remained dependent and in the care of the Agency. Jd.W. remained in Mother's care while Mother was a dependent child in foster care from September 21, 2011, when the Agency placed Mother pursuant to an emergency shelter order, until July 31, 2013 when Mother signed herself out of

3

dependency, against the Agency's advice. Jd.W. was then placed into foster care where he remains.

Jm.W. was born while Mother was in foster care and conceived during the time that Father was ordered to have no contact with Mother by the juvenile court. Jm.W. remained in Mother's care while Mother was a dependent child in foster care from his birth, February 28, 2013, until July 31, 2013 when Mother signed herself out of dependency.

Jd.W. and Jm.W. remain in foster care since Mother signed herself out of dependency on July 31, 2013. Mother was informed by the Agency that she could keep her children and transition into independent living, but Mother chose to remove herself from care and reside with Father, leaving her children behind in foster care.

Mother, after examination by two Psychiatrists, Dr. Ronald Neeper, M.D., Ph.D. and Dr. Sadfar I. Chaudhary, M.D., was determined to be incompetent to make an informed decision to remove herself from dependency. Dr. Neeper and Dr. Chaudhary further opined that Mother does not have a reasonable or rational understanding of the potential consequences, and that due to her cognitive limitations, is unable to make mature decisions, have adequate, mature self-control, and be a responsible adult.[4] Mother has been diagnosed with mild mental retardation, sexual abuse of a child as victim, and has an I.Q. of 60-63. Mother is preoccupied with Father and does not appreciate the danger to her and the children that Father imposes as a sex offender. Father's undue influence over Mother and her mental retardation clearly affect Mother's judgment. Mother's cognitive abilities limit her parenting capabilities and Mother lacks the ability to understand the needs of the children and to understand what is safe and unsafe.

---

[4] Agency's Exhibits 2 and 3.

4

Mother was unsuccessfully discharged from parenting classes provided by the Bair Foundation. Mother demonstrated ineffective intervention and poor execution of disciplinary skills and could not receive instruction effectively. Mother refused nurturing parenting services offered to her by the Agency from another provider, Justice Works Youth Care. Mother does not have the ability to parent independently or to prepare meals for the children independently. It was clear from the testimony and evidence presented that Mother's incapacity to implement safe parenting skills cannot and will not be remedied by Mother.

Mother has not demonstrated a parent-child relationship with the children. Mother has little emotional connection with her children. Mother has displayed a lack of empathy for the children and the inability to react to the children's needs. Mother has developed a bond with the older child, Jd.W., however Jd.W. looks to his foster mothers for parental guidance.[5] The children do not react adversely upon the conclusion of visits with Mother or Father. Termination of Mother's parental rights would not be detrimental to the children, and would serve the children's best interests.

At the request of the Agency, Dr. Michael Crabtree, Ph.D. conducted a bonding assessment and prepared a report for use at trial.[6] Along with his report being admitted into evidence, Dr. Crabtree's testimony was offered at the hearing. Dr. Crabtree testified that he conducted a bonding assessment of Mother and Jd.W. on November 25, 2012, however he did not conduct an assessment of Mother and Jm.W. or of Father. Dr. Crabtree noted in his report the significant concerns regarding Mother's ability to react to the child's needs and to perform parental duties. Dr. Crabtree concluded that although

---

[5] Agency's Exhibit 1, the report of Dr. Michael Crabtree, Ph.D.
[6] Id.

5

Mother has a bond with Jd.W., he found there to be little emotional connection with Mother and Jd.W. Dr. Crabtree further opined that termination of parental rights would not have a significant and long lasting detrimental effect on the well being of Jd.W., and that the decision to terminate should be based on parental capacity.

Father is currently 54 years of age, and is a registered sex offender required to be registered under Megan's Law due to his conviction for a sexual assault of his nine year old granddaughter, and for his conviction for indecent assault of another minor.[7] Father is designated as a "founded perpetrator of sexual abuse" by Pennsylvania Childline Registry for the sexual assault of his granddaughter.[8]

During the dependency proceedings for Jd.W., Father was court-ordered to submit to an evaluation by Licensed Psychologist David Gentile, M.A., who specializes in sex offenders. Mr. Gentile reported that the test results from Father's completion of the Abel Assessment for Sexual Interest-2 (AASI-2) indicate that Father falls into the deviant range for persistent sexual interest in 3 of 4 categories, including pre-school and grade school age females, and pre-school age males.[9] The report further indicated that the test results from Father's completion of the Minnesota Multiphasic Personality Inventory-2 (MMPI-2) indicate that Father is prone to anger and hostility, and resentment and displaces blame on others; that he is suspicious and rigid in his social relationships and that he tends to misinterpret social situations and generally has a poor understanding of social mores.[10]

---

[7] Agency's Exhibits 11, 12, 13 and 14.
[8] Agency's Exhibit 13.
[9] Agency's Exhibit 4.
[10] Id.

6

Mr. Gentile further concluded that Father is an untreated sex offender and that his personality concerns include lack of accountability, cognitive distortions and anger management issues.[11] Moreover, Mr. Gentile opined that Father is very narcissistic and engages in criminogenic thinking and high risk behaviors.

There is no question that Father is a safety threat to minor children. Father has a history of procreating children and has fathered 17 children. During the dependency proceedings, Father admitted involvement with Mother and her minor sisters and brothers for many years. Father has not completed his court-ordered mental health assessment and has not completed court-ordered sexual offenders' treatment. Father violated the court order restricting him from contact with Mother, and Father impregnated Mother during this restriction.

There was no evidence or testimony presented that Father has a bond with either of the children. Father has not provided any cards, gifts or letters for the children and has not inquired about the children through the Agency. However, Father has regularly attended the supervised visits with the children and his visits have been appropriate. All of Father's visits with the children have been supervised since the children were born. Nevertheless, Father shows no compassion or affection for the children. There is no evidence that Father has had a parental relationship with Jd.W. or Jm.W. or with any of his other 15 children. Therefore, termination of Father's parental rights would not be detrimental to the children, and would serve the children's best interests.

Mother and Father chose not to present evidence or to testify at the termination hearings, although advised on the record of their right to do so, after having submitted to colloquy regarding their rights by the Trial Court and by their respective counsel.

---

[11] Id.

7

The children have remained in their current placement since February 28, 2013, which is safe and appropriate, and the children are doing well. The children's *Guardian ad Litem* concurred that the termination of the parental rights of Mother and Father will serve the children's welfare and best interests.

Based on the testimony and evidence, and review of the exhibits and the file, the Trial Court concluded that the Agency had met its burden to prove by clear and convincing evidence that Mother's and Father's parental rights should be terminated, and that the termination of parental rights would serve the needs and welfare of the children. Accordingly, the Trial Court entered the order in question, terminating the parental rights of Mother and Father to Jd.W. and Jm.W.

## Legal Analysis

On appeal, Mother and Father are challenging the Trial Court's discretion in reaching the decision to terminate their parental rights. Specifically, Mother and Father raise two issues on appeal, first, whether the Trial Court abused its discretion by finding that statutory grounds existed for the involuntary termination of their parental rights under 23 Pa.C.S.A. §§ 2511(a)(2), and second, whether the Trial Court abused its discretion in finding that termination of their parental rights would best serve the needs and welfare of the children, under 23 Pa.C.S.A. § 2511(b).

The standard and scope of review applicable in termination of parental rights cases requires the Superior Court to consider whether the decision of the trial court is supported by competent evidence.[12] Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the order of termination must

[12] See *In re Julissa O.*, 2000 PA Super 31, 746 A.2d 1137, 1139 (Pa.Super. 2000).

8

stand.[13] Where a trial court has granted a petition to involuntarily terminate parental rights, the Superior Court must accord the hearing judge's decision the same deference that it would give to a jury verdict.[14] The Superior Court must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.[15]

The initial burden of proof for termination is on the petitioner, in this case the Agency, to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid.[16] Moreover, "[t]he standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'"[17] The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence.[18] If competent evidence supports the trial court's findings, the Superior Court will affirm the trial court's order, even if the record could also support an opposite result.[19] The petitioning Agency does not have to prove all of the grounds; one is sufficient.[20] Furthermore, the Superior Court should affirm the trial court's termination of parental rights with regard to any one subsection of section § 2511(a).[21]

---

[13] See *Id.*

[14] *See Id.*

[15] *See In re R.N.J.*, 985 A.2d 273, 276 (Pa.Super. 2009) (quoting *In re S.H.*, 879 A.2d 802, 805 (Pa.Super. 2005))

[16] *See Id.*

[17] *See Id.* (quoting *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa.Super. 2003)).

[18] *See In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004).

[19] *See In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa.Super. 2003).

[20] *See In re: C.M.S.(l)*, 832 A.2d 457 (Pa.Super. 2003).

[21] *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

In their concise statement of matters complained of on appeal, Mother and Father claim, without any specificity, that the Trial Court erred in finding that statutory grounds for termination were proven under sections 2511(a)(2) of the Adoption Code. That section provides as follows:

(a)(2)  The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well being, and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

Since the birth parents do not make specific allegations of error, the analysis must be accomplished by a general review of the facts, beginning with Mother.

There can be no question that Mother's repeated incapacity, abuse, neglect or refusal to parent caused the children to be without essential parental care, control or subsistence necessary for their physical or mental well being. Mother was 17 years old at the time that Jd.W. was born, and became a dependent child herself for the third time when Jd.W. was two months old. Mother has been diagnosed with mild mental retardation and has an I.Q. of 60-63. Mother has been the victim of sexual abuse as a child, including being victimized by Father, who began his relationship with Mother when she was 15 and perhaps before. Mother is preoccupied with Father and does not appreciate the danger to her and the children that Father imposes as an untreated sex offender. In fact, Mother has testified during the dependency proceedings that she does not believe that Father committed the sex offenses to which he pleaded guilty. Father's undue influence over Mother and her mental retardation clearly affect Mother's judgment. The two psychiatrists, Dr. Neeper and Dr. Chaudhary, had found Mother to be

10

has a relationship with any of his 17 children. Father chose not to testify or present evidence. Nevertheless, there was no inference or suggestion from any of the testimony that termination of Father's relationship with the children would have any adverse effect or cause any detriment to the children. On the contrary, the evidence clearly demonstrated that Father is a danger to children. Father has been taking advantage of and exploiting Mother since she was at least age 15. Father pleaded guilty to sexually assaulting his nine year old granddaughter and another minor. From the report of the sexual offenders' counsel, Mr. Gentile, it is clear that Father continues to pose a threat to children, due to his deviant and persistent sexual interest in pre-school and grade school age females and pre-school age males,[27] and due to his proclivity to anger and hostility and criminogenic thinking.

The uncontroverted evidence demonstrated, by clear and convincing evidence, that termination of Mother's and Father's parental rights would be consistent with the children's best interests and would best serve their needs and welfare.[28]

Accordingly, the Trial Court respectfully submits that the order of court dated December 16, 2013, terminating Mother's and Father's parental rights to the children, Jd.W. and Jm.W. should be affirmed.

By the Court,

Date:___3/5/14___

_____J.
John F. DiSalle, J.

---

[27] Agency's Exhibit 4.
[28] Id.

14



IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

IN RE:                                    )
                                          )
ADOPTION OF                               )
                                          )
J█████ W█████                             )        No. 63-2013-0144
                                          )
        And                               )
                                          )
J█████ W█████,                            )        No. 63-2013-0933
                                          )
Minor Children.                           )

REGISTERED MAIL
REGISTER OF WILLS
WASHINGTON CO.
2013 DEC 17 PM 4:31

TERMINATION OF PARENTAL RIGHTS
PROCEEDINGS IN THE ABOVE CAUSE, BEFORE
THE HONORABLE JOHN F. DI SALLE, J.

APPEARANCES:

Joyce Hatfield Wise, Esquire, representing Petitioner, the
Washington County Children and Youth Social Service
Agency.

Marianne Hathaway, Esquire, Guardian ad Litem for the
Minor Children.

Keith Owen Campbell, Esquire, representing the natural
father, M█████ W█████

Erin Dickerson, Esquire, representing the natural mother,
I█████ B█████

## FINDINGS & ORDER

This matter comes before the Court on the Petitions for Termination of Parental Rights

filed on behalf of the Minor Children, J█████ W█████ and J█████ W█████ by the Petitioner, the

Washington County Children and Youth Social Services Agency ("the Agency").

**Procedural History:**

The Petition for Termination of Parental Rights with respect to J█████ W█████ was filed by

A

the Agency on February 6, 2013, and the Petition for Termination of Parental Rights with respect to J███ W█████ was filed on July 29, 2013, seeking termination with respect to the natural father, M███ W█████ ("Father") and the natural mother, L█████ B█████ ("Mother"). Prior to the filing of the Termination proceedings, the Minor Children had been the subject of dependency proceedings brought by the Agency, and had been adjudicated as dependent children by the Juvenile Court.

The instant proceedings were scheduled for October 2, 2013, and completed on December 3, 2013. Both parties were present at the hearings and represented by counsel. The Court heard testimony and evidence from both sides.

### Factual Findings:

The Court enters this order based upon the following findings:

1. That J███ W█████ was born on August 1, 2011, and is now two (2) years old and J███ W█████ was born on February 28, 2013, and is now nine (9) months old.

2. That Mother and her family have had a history of involvement with the Agency dating back to 2001, for issues including truancy, parenting deficiencies, and sexual abuse allegations.

3. That Mother had been previously adjudicated a dependent child on May 1, 2001, but dependency was terminated on October 30, 2001; Mother was again adjudicated dependent on May 1, 2007, but that her dependency was again terminated on March 5, 2009.

4. That Mother was again adjudicated a dependent child by order dated October 13, 2011, when Mother was seventeen (17) years old and J███ was two

2

months old.

5. That on or about September 20, 2011, Mother was removed from the home of her parents and from the home of Father, M████ W████ along with Ja███, by voluntary placement agreement followed by an emergency shelter order.

6. That on October 13, 2011, the Court granted an emergency shelter order removing J████ from the care of Father, but allowing Ja███ to remain in Mother's care as long as Mother remained in care of the Agency.

7. That J████ remained in Mother's care while Mother was a dependent child in foster care from September 21, 2011, when the Agency placed Mother pursuant to an emergency shelter order, until July 31, 2013 when Mother signed herself out of dependency.

8. That J████ was born while Mother was in foster care and conceived during the time that Father was ordered to have no contact with Mother; that J████ remained in Mother's care while Mother was a dependent child in foster care from his birth, February 28, 2013, until July 31, 2013 when Mother signed herself out of dependency.

9. That J████ and J████ remain in foster care since Mother signed herself out of dependency on July 31, 2013.

10. That Mother was informed by the Agency that she could keep her children and transition into independent living, but chose to remove herself from care and reside with

Father.

11. That Mother, after examination by two Psychiatrists, Dr. Neeper and Dr.

3

Chaudhary, was determined to be incompetent to make to an informed decision to remove herself from dependency, and that she does not have a reasonable or rational understanding of the potential consequences, and that due to her cognitive limitations, is unable to make mature decisions, have adequate, mature self-control, and be a responsible adult.[1]

12. That Mother has been diagnosed with mild mental retardation, sexual abuse of a child as victim, and has an I.Q. of 60-63.

13. That Mother is preoccupied with Father and does not appreciate the danger to her and the children that Father imposes.

14. That Father's undue influence of Mother and her mental retardation clearly affect Mother's judgment; that Mother's cognitive abilities limit her parenting capabilities; that Mother lacks the ability to understand the needs of the children and to understand what is safe and unsafe.

15. That Mother was unsuccessfully discharged from parenting classes provided by the Bair Foundation; Mother demonstrated ineffective intervention and poor execution of disciplinary skills and could not receive instruction effectively.

16. That Mother refused nurturing parenting services from another provider, Justice Works Youth Care.

17. That Mother does not have the ability to parent independently or to prepare meals for the children independently.

18. That Mother has not demonstrated a parent-child relationship with the

---

[1] Agency's Exhibits 2 and 3.

4

children; that Mother has little emotional connection with her children; that Mother has displayed a lack of empathy for the children and the inability to react to the children's needs.

19. That Mother does have a bond with J████, however J████ looks to his foster mothers for parental guidance; that the children do not react adversely upon the conclusion of visits with Mother or Father.

20. That the children maintain a bond with their birth parents is not, by itself, sufficient ground to deny the children the permanency of adoption. See In Re: T.S.M., a Minor, T.R.M. a Minor, T.J.M., a Minor, T.A.M., a Minor, N.D.M., a Minor, Nos. 7-11 WAP 2013 (Pa. Supreme Ct. 2013).

21. That termination of Mother's parental rights would not be detrimental to the children and would serve the children's best interests.

22. That Father is a registered sex offender required to be registered under Megan's Law due to his conviction for a sexual assault of his nine year old granddaughter, and for his conviction for indecent assault of another minor.[2]

23. That Father is a founded perpetrator of sexual abuse for the sexual assault of his granddaughter.[3]

24. That the test results from Father's completion of the Abel Assessment for Sexual Interest-2 (AASI-2) indicate that Father falls into deviant range for persistent sexual interest in 3 of 4 categories including pre-school and grade school age females and pre-school age males.[4]

---

[2] Agency's Exhibits 11, 12 and 13.
[3] Agency's Exhibit 13.
[4] Agency's Exhibit 4.

5

25. That the test results from Father's completion of the Minnesota Multiphasic Personality Inventory-2 (MMPI-2) indicate that Father is prone to anger and hostility, resentment and displaces blame on others, that he is suspicious and rigid in his social relationships and that he tends to misinterpret social situations and generally has a poor understanding of social mores.[5]

26. That Father is an untreated sex offender; that his personality concerns include lack of accountability, cognitive distortions and anger management issues.[6]

27. That Father is very narcissistic and engages in criminogenic thinking and high risk behaviors.

28. That Father is a safety threat to minor children.

29. That Father has a history of procreating children and has fathered 17 children.

30. That there is no evidence that Father has had a parental relationship with any of his children.

31. That Father has not completed his court ordered mental health assessment and has not completed court ordered sexual offenders' treatment.

32. That Father violated the court order restricting him from contact with Mother and Father impregnated Mother during this restriction.

33. That Father has not provided any cards, gifts or letters for the children and has not inquired about the children through the Agency.

34. That Father has regularly attended supervised visits with the children and his visits have been appropriate.

35. That Father's visits with the children have been supervised since the children

---

[5] Id.
[6] Id.

6

were born.

36. That Father shows no compassion or affection for the children.

37. That there was no evidence or testimony presented that Father has a bond with the children.

38. That termination of Father's parental rights would not be detrimental to the children and would serve the children's best interests.

39. That Mother and Father chose not to present evidence or to testify at the termination hearings, although advised on the record of their right to do so.

40. That the Petitioner has met its burden to prove by clear and convincing evidence that Mother and Father have failed to perform parental duties, causing the children to be without essential parental care, control and subsistence necessary for their physical and emotional well-being, for the six months preceding the petition and before.

41. That there is no reasonable likelihood that Mother or Father will be able to remedy the conditions which contributed to their refusal, neglect and failure to perform parental duties.

42. That the children's Guardian ad Litem concurs that the termination of Mother's parental rights and Father's parental rights will serve the children's welfare and best interests.

43. That the Petitioners have met their burden to prove that Mother's and Father's parental rights should be terminated.

44. That termination of Mother's and Father's parental rights would serve the needs and welfare of the children.

Accordingly, the Court enters the following:

## ORDER

AND NOW, this __16th__ day of December, 2013, in consideration of the evidence and testimony presented, review of the file, and review of the exhibits submitted by the parties, and in light of the Court's findings set forth above, it is ORDERED, ADJUDGED and DECREED that the Petitions for Involuntary Termination of Parental Rights are hereby GRANTED, and that the parental rights of Father, Melvin Wilson and Mother, Latasha Brown to the children, Jaden Wilson and Jamel Wilson are hereby terminated forever.

It is further ORDERED, ADJUDGED and DECREED that pending the adoption proceedings, the children shall remain in the care, custody and control of Washington County Children and Youth Agency, and shall remain in the home of their pre-adoptive parents pending further order of court.

By the Court,

John F. DiSalle, J.

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY,
PENNSYLVANIA

ORPHANS COURT DIVISION

IN RE:

    ADOPTION OF:              )
                           )
    J████ W██████          )     NO. 63-13-0933
                           )
    A MINOR CHILD.       )

## FINAL ORDER

AND NOW, this __16th__ day of ~~October~~ December, 2013, upon due notice to the parents and upon consideration of the facts set forth in an involuntary termination hearing; this Court finds that the Agency has proven by clear and convincing evidence that statutory grounds for the involuntary termination of L█████ B█████'s rights exist under 23 Pa. C.S. §2511 (2) and the statutory grounds for the involuntary termination of M█████ W██████ rights exist under 23 Pa. C.S. §2511 (2). This Court further finds, pursuant to §2511(b) upon primary consideration of the developmental, physical and emotional needs and welfare of the child, that termination of the parents' rights best serves the needs and welfare of the subject child.

Accordingly, it is hereby ORDERED AND DECREED that the parental rights of L██████ B█████ AND M█████ W█████ to the above-named child are hereby terminated forever. The custody of the minor child shall remain with the Washington County Children and Youth Social Service Agency and the Agency shall have the right to proceed with the adoption of the child.

BY THE COURT

_____
John E. DiSalle, Judge

# IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

## ORPHANS COURT DIVISION

IN RE:

ADOPTION OF:                           )
                                       )
JA███ W█████                           )          NO. 63-13-0144
                                       )
                                       )
A MINOR CHILD.                         )

## FINAL ORDER

AND NOW, this _16th_ day of ~~October~~ December, 2013, upon due notice to the parents and upon consideration of the facts set forth in an involuntary termination hearing; this Court finds that the Agency has proven by clear and convincing evidence that statutory grounds for the involuntary termination of L█████ B█████'S rights exist under 23 Pa. C.S. §2511 (1) and (2) and the statutory grounds for the involuntary termination of M█████ W█████'S rights exist under 23 Pa. C.S. §2511 (1), (2), (5) and (8). This Court further finds, pursuant to §2511(b) upon primary consideration of the developmental, physical and emotional needs and welfare of the child, that termination of the parents' rights best serves the needs and welfare of the subject child.

Accordingly, it is hereby ORDERED AND DECREED that the parental rights of L█████ B█████ AND M█████ W█████ to the above-named child are hereby terminated forever. The custody of the minor child shall remain with the Washington County Children and Youth Social Service Agency and the Agency shall have the right to proceed with the adoption of the child.

BY THE COURT

_____
John F. DiSalle, Judge